Bergan, J. (dissenting).
The justification for the new principle announced today by the court, overruling Glaser v. Huette (232 App. Div. 119, affd. 256 N. Y. 686), is that it supposes a more symmetrical consistency in the law of motor vehicle accident adjudication. It will, no doubt, have some such analytical consequence. There were defects of pure logic in the Glaser doctrine, but the leeway it allowed in motor vehicle litigation avoided some fairly obvious injustices.
Law is more than a congeries of neat logical packages quite consistent with each other. It is more essentially an on-going method of reaching pragmatic approximations of fairness in myriads of human situations where absolutes of right and wrong either do not exist at all or rest on ideas only theoretically related to real life situations.
There is no field in the law where the absolutes of legal right and wrong are more obscure in practice than in automobile accident litigation. The theory of liability is a legally remediable “ wrong ”, a tort, but universal compulsory liability insurance, the cost of which is an impost on everyone able to have a car, has led to the general expectation that if a man is hurt by a motor vehicle the common fund of insurance premiums to which everyone contributes will compensate him.
In practice, the tort, the “ wrong ” which is almost totally irrelevant to the momentary mistakes of judgment or split-second miscalculations of drivers which give rise to highway accidents, plays no significant part in determining who will be compensated except in a few peripheral far-out cases. A man injured by a motor vehicle casualty expects to recover from the appropriate carrier and, in due course, probably will recover by settlement or, in a small percentage of cases that go to trial, by verdict of the jury.
*77 In this vast legal enterprise there are certain injured parties whose litigation position involves a handicap. These parties would, like all other injured persons, be quite certain of recovery could they assert their claims in simple, direct fo?rm, unencumbered by other conflicting claims.
The experience of the profession is that a passenger in a vehicle who is injured in a collision should assert his claim against the carriers of both owners and of both drivers and thus be in a preferred litigation position in which, barring some odd miscarriage, it is next to impossible to lose.
But “ justice ” in the sense that one or the other driver might have some serious injury and a good claim to be compensated from the proceeds of universal coverage suggests that the preferred position of the passenger should not be permitted to impair a driver’s claim. He can assert it as a cross claim in the passenger’s action, but the jury must be told that if the passenger recovers against both drivers neither can recover against the other and so the drivers ’ actions are in practice subordinated if not submerged in the passenger’s action by the method of litigation.
"When the situation is seen whole this is unfair because only those in this kind of disadvantageous litigation position, and only because of that position, are frequently denied recovery which people able to assert their own claims in uncomplicated procedure will have.
The doctrine in Glaser ameliorated this .disadvantage because it left open the possibility that at least one of two drivers against whom passengers or other third-party recoveries had been had could recover against the other.
The Glaser opinion did this cryptically and pragmatically (232 App. Div. 119): 1 ‘ We think that since the parties now here were not adversaries in the former suits but codefendants wherein no duty existed to contest the issue of negligence as between them and no pleadings existed between them, the decisions there settled nothing as to the liability of the codefendants to each other.” This may not have been fully consistent logically, but it allowed a latitude which has avoided injustice to parties in a disadvantaged litigation situation.
Nor is Glaser alone in avoiding some of the adverse effects of a rigid consistency. Efforts to prevent this kind of conse *78 quence in somewhat similar situations are to he seen in Elder v. New York & Penn. Motor Express (284 N. Y. 350) which clarified the apparent conflict between Haverhill v. International Ry. Co. (217 App. Div. 521, affd. 244 N. Y. 582), which took a view against rigid consistency with prior adjudications, and Good Health Dairy Prods. Corp. v. Emery (275 N. Y. 14), which took a more rigid view. Cummings v. Dresher (18 N Y 2d 105) turned in a large part on a special problem created by the kind of verdict returned on the prior trial. It did not disavow the Glaser rule,, nor did B. R. De Witt, Inc. v. Hall (19 NY 2d 141) turn on the kind of situation involved in Glaser or the present cases.
And the kind of litigation in which absolute consistency is desirable and perhaps achievable, as in the contract problem considered in Israel v. Wood Dolson Co. (1 N Y 2d 116), and the claims against a bank for the amount of a deposit considered in Bernhard v. Bank of America (19 Cal. 2d 807), is different in method and in policy from motor vehicle accident litigation.
The situation of the taxi driver Wever in one of the present three cases illumines the general problem. The other car in collision with the taxi was uninsured. It was readily foreseeable that any jury would find a verdict against the insured taxi first. of all, and 'only incidentally against the other vehicle.
The task of counsel for the taxi driver to avoid a verdict against the taxi owner or driver so that the passenger’s verdict would be against the other vehicle alone was next to impossible.
In the practical world of tort litigation the passenger’s verdict was inevitable. Yet the taxi driver Wever was seriously injured and if the passenger had not sued him he would certainly have recovered in due course against the other owner—here replaced by MVAIC. The rule in Glaser would have permitted this. The logical consistency established by today’s decision prevents it.
Mr. Wever asserts that the accident was due to the uninsured driver’s careless operation and Wever himself sustained, among other injuries, a fracture of tire pelvis, fractures of five ribs and a comminuted fracture of the left clavicle. He was hospitalized for three weeks and out of work for three months. The overruling of Glaser by today’s decision cuts off all chance of recovery. The other two plaintiffs are in similar situations.
*79 There is no pressing public need for the change. The adverse effect on court calendars of reduplication of suits is chimerical. Most motor vehicle cases are settled, including cases of the type now before the court which could play no significant part in the whole.
The last published report of the Judicial Conference (Thirteenth Annual Report, 1968) shows that for the calendar year July 1, 1966 to June 30, 1967 negligence cases occupied overwhelmingly the major part of the business coming into the Supreme Court State-wide in the ratio of 37,896 negligence to 4,189 contract to 1,266 " other tort” (Table 7, p. A116).
During the same period the report shows total dispositions of cases in the Supreme Court at 53,572 (Table 11, p. 418). Only a small fraction, about 5% of these dispositions, was by jury verdict (2,965). Since, if we continue the Glaser leeway of liability these cases would continue to be settled in the same proportion as cases generally, it is not easy to share the apprehension of adverse effect of the old rule on calendar congestion.
Judge Breitel noted this effect in his dissent in Hall (19 N Y 2d 141, 149, supra): “As for the offsetting disadvantage of duplicating the trial of issues in litigation, this does not weigh heavily in measuring the balance of convenience. The present rules in this area have subsisted for a long time and there is no great amount of such duplicated litigation.”
One logical extension of the Glaser rule would be to permit “ A ” to recover from “ B ” and then “ B ” to recover from “ A ”. The failure to permit this in view of general compulsory insurance coverage creates unfairness in itself.
We do not meet that problem today. Comparative negligence may eventually become a partial solution for the problem. The court need not adopt that to decide these present cases; but on the other hand it ought not discard a rule which worked equitably where it applied and thus take an unnecessary step in the direction of rigidity in motor vehicle litigation. It is already rigid enough and there are signs of mounting public dissatisfaction at the way courts and lawyers handle that which is essentially a casualty cost distribution problem at very high expense to the taxpayer and the ultimate consumer of insurance coverage.
*80 If the system is to be preserved its inequities and injustices ought to he minimized. We should not go out of our way to create new problems, as we are doing in this present decision.
It ought not be expected that the logical consistency of adjudication which was defendable in Israel v. Wood Dolson Co. (1NY 2d 116, supra) and in Bernhard v. Bank of America (19 Cal. 2d 807, supra) he applied in full vigor to the peculiar task of determining who is ‘1 wrong ’ ’ and who is ‘ ‘ right ’ ’ in the operation of motor vehicles.
The orders should be affirmed in Wever and Bartolone-, and the order in Schwartz should he reversed.
In Schwartz v. Public Administrator of County of Bronx:
Order affirmed, with costs.
Chief Judge Fuld and Judges Burke, Scileppi and Jasen concur with Judge Keating ; Judge Bergan dissents and votes to reverse in a separate opinion in which Judge Breitel concurs.
In Bartolone v. Niagara Car $ Truck Rentals -.
Order reversed, with costs, and case remitted to Special Term for further proceeding in accordance with the opinion herein. Question certified answered in the negative.
Chief Judge Fuld and Judges Burke, Scileppi and Jasen concur with Judge Keating; Judge Bergan dissents and votes to affirm in a separate opinion in which Judge Breitel concurs.
In Matter of Wever ■(MVAIC):
Order reversed, with costs, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.
Chief Judge Fuld and Judges Burke, Scileppi and Jasen concur with Judge Keating ; Judge Bergan dissents and votes to affirm in a separate opinion in which Judge Breitel concurs.